UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PRAXAIR, INC., THE PRAXAIR PENSION PLAN, and THE INDIVIDUAL MEMBERS OF THE PRAXAIR PENSION PLAN INVESTMENT AND ADMINISTRATIVE COMMITTEE,<br>    Plaintiffs,<br><br>v.<br><br>UNION CARBIDE CORPORATION, THE UNION CARBIDE EMPLOYEES' PENSION PLAN (FORMERLY KNOWN AS THE RETIREMENT PROGRAM PLAN FOR EMPLOYEES OF UCC AND ITS PARTICIPATING SUBSIDIARY COMPANIES), THE DOW CHEMICAL COMPANY, THE DOW CHEMICAL COMPANY RETIREMENT BOARD, THE INDIVIDUAL MEMBERS OF THE DOW CHEMICAL COMPANY RETIREMENT BOARD, ALLAN E. FOWLER, DOUGLAS J. ANDERSON, JANET VAN ALSTEN, CAROL DUDLEY, GEORGE HAMILTON, ROBERT WALKER, THOMAS J. BLOCK, RICHARD M. GROSS, GEOFFREY D. KUSCH, AND LEE P. MCMASTER, and THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br>    Defendants. | CIVIL ACTION NO.<br>3:04cv880 (SRU) |

## **RULING ON MOTIONS TO DISMISS**

In 1992, Praxair, Inc. ("Praxair"), one of the plaintiffs, spun off from Union Carbide Corporation ("UCC"), one of the defendants. Prior to the spinoff, many UCC employees were participants in UCC's pension plan. When Praxair spun off, it took with it some former UCC-Plan employees, and it created its own pension plan that was initially funded by the division of assets between the UCC and Praxair plans.

The instant dispute arises out of Prudential Insurance Company of America's ("Prudential") demutualization in 2000. When Prudential demutualized, it compensated its policyholders for their membership interests in the company. Upon its demutualization, Prudential compensated both the UCC and Praxair plans for their membership interests in Prudential. The plaintiffs now claim that they are entitled to a portion of the demutualization proceeds received by UCC's Plan, because some current Praxair-Plan employees and retirees effectively caused the UCC Plan's receipt of Prudential demutualization proceeds by working at UCC and making UCC Plan contributions before the spinoff. In their complaint, plaintiffs assert two claims for breach of fiduciary duty under ERISA, and other claims arising under state law. For reasons that follow, plaintiffs' ERISA claims fail, and I thus do not decide whether their state law claims are cognizable.

## I. Factual and Procedural Background

The following facts are taken from plaintiffs' complaint, and the documents to which it refers, and are assumed true for purposes of the instant motion.

### A. Praxair's Spinoff and the Employee Benefits Agreement

Defendant UCC is a large chemical and polymer company. At some point in the 1980s, UCC's industrial gases division, Union Carbide Industrial Gases, Inc. ("UCIG"), became a separate, but wholly-owned, subsidiary of UCC. At the end of June 1992, UCIG spun off from UCC as an independent company and was renamed Praxair, Inc.

On June 4, 1992, pursuant to the spinoff, UCC and Praxair entered into an Employee Benefits Agreement ("EBA") that allocated UCC-Plan assets and liabilities between the UCC and Praxair plans. The EBA provided that the UCC Plan would retain liability for all retirees and

terminated vested employees as of the spinoff date. The EBA also compensated the UCC Plan for covering those liabilities.

The remainder of the surplus in the UCC Plan was then divided between the UCC Plan and the Praxair Plan based upon the then-existing benefit obligations that the respective plans owed to their active participants. Specifically, the EBA calculated that the UCC Plan should receive seventy-four percent of the surplus and the Praxair Plan should receive twenty-six percent of the surplus. The EBA also provided that Praxair would "reimburse UCC for twenty-nine percent (29%) of the cost of any successful pension-related claim against UCC or the UCC Retirement Plan arising from events which occurred before the Spinoff Date." Compl. at ¶ 37. The parties submitted the plan to New Jersey insurance authorities for approval.

Because the parties anticipated that it would take some time for the EBA to gain approval from the insurance authorities, UCC, Prudential, and Praxair entered into a temporary agreement in July 1992 ("Tri-Party Agreement"). The Tri-Party Agreement created a sub-account within a previously-existing UCC-Plan annuity contract, GA-5298, that the UCC Plan had purchased from Prudential in 1985. The new annuity contract contained $155 million of assets from GA-5298 that were earmarked for active Praxair employees as of the 1992 spinoff date. New Jersey insurance authorities finally approved GA-7357, the Praxair Plan's new group annuity contract from Prudential, on January 2, 1996. Praxair asserts that the Tri-Party Agreement made the Praxair Plan "effective" in July 1992.

In 1994, UCC and Praxair amended the EBA. The amended agreement provided that "Praxair will be entitled to twenty-nine percent (29%) of any recovery, whether by successful claim or settlement, made by the UCC Retirement Plan arising from events which occurred

before the Spinoff Date." Compl. at ¶ 41.

On February 29, 2000, UCC transferred $3.5 million to the Praxair Plan to settle all of UCC's outstanding obligations to Praxair under the EBA. In February 2001, Dow Chemical Company ("Dow") acquired UCC and assumed investment management responsibilities for the UCC Plan.

B.  Prudential's Demutualization

In 1998, after the Praxair spinoff, New Jersey enacted a law that permitted domestic mutual life insurers to convert into domestic stock life insurance companies, a process known as demutualization. N.J. Stat. §§ 17:17C-1–C-14. In December 2000, Prudential's Board of Directors adopted a reorganization plan to demutualize Prudential. Prudential's demutualization rendered Prudential policyholders and contract holders eligible to receive compensation in exchange for their membership interests in Prudential. The relative distribution of the demutualization proceeds as of the reorganization plan's adoption date forms the crux of the instant dispute.

Prudential's reorganization plan sets forth the allocation principles and methodology for distributing the demutualization proceeds. Under the reorganization plan, the amount of demutualization proceeds that contract holders received depended upon the contract's "actuarial contribution" to Prudential's surplus. The plan defines actuarial contribution as "the accumulated contribution that policy is estimated to have made in the past to the company's surplus ('historical contribution') plus the present value of the contribution that the same policy is expected to make in the future ('prospective contribution')." Compl. at ¶ 53.

In February 2002, Prudential transferred 61,983 shares of Prudential stock to satisfy its

obligation to the Praxair Plan under the reorganization plan. Prudential calculated the Praxair Plan's share of the demutualization proceeds based upon the Praxair Plan's actuarial contribution to the Prudential surplus from January 2, 1996, the date upon which New Jersey insurance authorities approved GA 7357, Praxair's new annuity contract, until Prudential demutualized in 2000. Prudential calculated the UCC Plan's share of the demutualization proceeds based upon the UCC Plan's actuarial contribution to the Prudential surplus from 1985, the date upon which the UCC Plan purchased GA 5298, UCC's annuity contract, until Prudential demutualized in 2000.

### C. Plaintiffs' Claims

Plaintiffs now assert several arguments why they are entitled to a substantial portion of the UCC Plan's demutualization proceeds. Plaintiffs' primary theory is that the demutualization proceeds were UCC-Plan assets at the time of the 1992 spinoff, even though Prudential did not demutualize until 2000, and even though the UCC Plan did not receive demutualization proceeds until after 2000, and thus UCC's demutualization proceeds are subject to the EBA's 1992 equitable distribution of assets between the UCC and Praxair plans:

> Because the membership interest could not be valued until the date of Prudential's demutualization, it could not be allocated until such date. In accordance with the Employee Benefits Agreement, the demutualization proceeds constitute a portion of the 1992 assets in excess of those needed to fund the liability for all retirees and terminated vested employees as of the effective date of the Praxair Plan spin-off, and therefore should be distributed between the Plans in accordance with the ratio of active pension obligations as off July 1, 1992 – 74% to the UCC Plan and 26% to the Praxair Plan.

Compl. at ¶ 57. Dividing the assets accordingly, plaintiffs argue, would fairly compensate the Praxair Plan for liabilities owed to active employees who became Praxair employees as of the

spinoff date.

Plaintiffs also assert, in the alternative, that Prudential, when calculating Praxair's share of demutualization proceeds, should have "counted" the actuarial contribution of the Praxair Plan from the July 1992 Tri-Party Agreement, the date upon which the plan became "effective," as opposed to January 1996, the date upon which its plan gained formal approval from New Jersey insurance authorities.

Finally, plaintiffs argue that, pursuant to the 1994 amended agreement, they are entitled to twenty-nine percent of the demutualization proceeds that the UCC Plan recovered.

On January 27, 2005, the plaintiffs filed an amended complaint in which they asserted nine claims against the defendants. Claims one and three assert causes of action for breach of fiduciary duty pursuant to ERISA against the Dow Retirement Board, the individual members of the Dow Retirement Board, and Prudential. Claim two asserts that the UCC Plan is holding demutualization proceeds in constructive trust for the Praxair Plan. Claim four asserts a cause of action for breach of co-fiduciary duty against Dow, the Dow Retirement Board, the individual members of the Dow Retirement Board, and Prudential. Claim five seeks relief against Dow under agency principles. Claim six asserts a cause of action for conversion against the UCC Plan, the Dow Retirement Board and the Individual Dow Retirement Board members. Claims seven, eight, and nine assert, in the alternative, causes of action for breach of contract against UCC and Prudential. All defendants have moved to dismiss all of plaintiffs' claims.

## II.   Standard of Review

Dismissal of a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted is appropriate when "it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The appropriate inquiry is not whether a plaintiff is likely to prevail, but whether the plaintiff is entitled to offer evidence to support his claims. *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). At this stage, courts assume the truth of all factual allegations and draw all reasonable inferences in the plaintiffs' favor. *E.E.O.C. v. Staten Island Savings Bank*, 207 F.3d 144, 148 (2d Cir. 2000). In addition, courts limit their consideration to facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference. *See Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996).

### III. Discussion

#### A. Plaintiffs' Breach of Fiduciary Duty Claims

The plaintiffs assert ERISA breach of fiduciary duty claims against the Dow defendants and Prudential. In their motions to dismiss, the Dow defendants and Prudential argue that the plaintiffs' complaint should be dismissed because: (1) Plaintiffs' complaint essentially challenges the New Jersey commissioner's decision to approve the EBA, and thus plaintiffs should have filed their claims in New Jersey appellate court and not in this court; (2) plaintiffs have not identified a plan to which the Dow parties are fiduciaries; (3) neither the Dow defendants nor Prudential acted as an ERISA fiduciary; (4) even if they acted as ERISA fiduciaries, neither the Dow defendants nor Prudential breached any duty; and (5) because plaintiffs have not stated a claim for breach of fiduciary duty, they cannot state a claim for breach of co-fiduciary duty. I find the defendants' last two arguments to be persuasive.

ERISA section 404 describes the duties a fiduciary owes to the participants and

beneficiaries of a plan. It states that:

> a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries . . . (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . and (D) in accordance with the documents and instruments governing the plan . . . .

29 U.S.C. § 1104(a)(1).

The plaintiffs assert that the Dow defendants and Prudential breached their duties of loyalty, exclusive purpose and prudence to the participants and beneficiaries of the Praxair Plan, and their fiduciary obligation to act in accordance with the plan documents, by allocating demutualization proceeds to the Praxair Plan based only on the Praxair Plan's contribution to the Prudential surplus as of January 1, 1996. Plaintiffs' argument is flawed, however, because it rests on the faulty premise that the purported plan documents entitle them to UCC's demutualization proceeds. Plaintiffs' theories are considered in turn.

    i.    *The EBA*

The EBA provided that any surplus in the UCC Plan, after compensating the UCC Plan for all retirees and terminated vesteds as of the spinoff date, be divided equitably between the Praxair Plan and the UCC Plan based upon the ratio of active plan employees in the respective companies. Contrary to plaintiffs' assertions, however, the demutualization proceeds were not UCC Plan assets at the time of the spinoff because the proceeds did not exist until Prudential demutualized more than eight years later. *See Bank of New York v. Janowick*, 470 F.3d 264, 274 (6th Cir. 2006) (holding that "rights to proceeds from a demutualization arise only when a mutual

insurance company demutualizes . . . ." Thus, "no right to the Prudential demutualization proceeds could have arisen prior to December 2000, when Prudential announced its plan to demutualize.").

Instead, the demutualization proceeds are more akin to, for example, stock dividends declared and paid after the spinoff. Provided the stock itself was fairly divided based upon its fair market value at the time of the spinoff, the EBA does not require the parties to redistribute assets at a later date every time one company's stock yields a dividend, or outperforms the other company's stock. To take another example, the demutualization proceeds would be akin to splitting real property. If one party to the split later finds oil underneath its property, and its property increases greatly in value, unless the agreement provides otherwise, there is no need to redistribute the property because one party's asset became more valuable subsequent to the asset split. In short, because the demutualization assets did not exist, and could not have existed, at the time of the spinoff, they were not subject to the EBA's equitable distribution of the assets. The EBA is thus not an ERISA plan document that entitles plaintiffs to the UCC Plan's demutualization proceeds.

   ii. *The Tri-Party Agreement*

The Tri-Party Agreement created a $155 million sub-account from an existing UCC annuity contract, GA-5298, pending the New Jersey insurance commissioner's approval of the Praxair Plan. The Tri-Party agreement did not, however, divide any assets between the UCC and Praxair plans, nor did the Agreement compel the Dow defendants or Prudential to award demutualization proceeds to the Praxair Plan when it received those proceeds years later. The Tri-Party Agreement is thus also not an ERISA plan document that entitles plaintiffs to UCC-

Plan demutualization proceeds.

Plaintiffs argue that the Tri-Party Agreement is relevant because it made the Praxair Plan effective as of July 1992, and thus, Prudential erred when compensating the Praxair Plan for contributions it made to the Prudential surplus beginning January 2, 1996. The fact that the Praxair Plan became effective in July 1992, however, is not probative of whether any of the defendants breached the Tri-Party Agreement. The effective date of the Praxair Plan may be probative of the Praxair Plan's actuarial contribution to Prudential's surplus, but it is not probative of whether the defendants breached the Tri-Party Agreement. In other words, plaintiffs' entitlement to demutualization arises, if at all, out of Prudential's reorganization plan, not out of the Tri-Party Agreement.

        iii.    *The 1994 Amended Agreement*

The 1994 Amendment to the EBA provided that "from and after the Spinoff Date, Praxair will be entitled to twenty-nine percent (29%) of any recovery, whether by successful claim or settlement, made by the UCC Retirement Plan arising from events which occurred before the Spinoff Date." Compl. at ¶ 41. The plaintiffs claim the amendment thus creates a fiduciary obligation for UCC and the Dow defendants to provide the Praxair Plan with twenty-nine percent of their demutualization proceeds. The demutualization proceeds, however, are not "a claim or settlement" that arise from an "event[] which occurred before the Spinoff Date." *See Janowick*, 470 F.3d at 274 (holding that "rights to proceeds from a demutualization arise only when a mutual insurance company demutualizes . . . ." Thus, "no right to the Prudential demutualization proceeds could have arisen prior to December 2000, when Prudential announced its plan to demutualize."). Again, the demutualization proceeds are more akin to stock dividends or new

found wealth deriving from the split of real property. Because the demutualization proceeds did not exist until 2000, the 1994 amendment to the EBA does not compel Prudential or the Dow defendants to transfer demutualization proceeds to the Praxair Plan.

    iv. *Prudential's Reorganization Plan*

Prudential's reorganization plan divided demutualization proceeds among policyholders by estimating the actuarial contribution that each policy provided to Prudential's surplus. The reorganization plan defined actuarial contribution as "the contribution that such Eligible Policy is estimated to have made to the Company's surplus, plus the estimated contribution that such Eligible Policy is expected to make to the Company's surplus in the future . . . ." Compl. at ¶ 53. The reorganization plan defines "Eligible Policy" as "a Policy that is In Force or deemed . . . to be In Force as of the Adoption Date." Prudential's Plan of Reorganization, Article I, p. 6. The reorganization plan's "Adoption Date" was December 15, 2000.

Here, plaintiffs do not seek to recover demutualization proceeds under their own annuity contract (i.e., Praxair's policy), but instead seek to recover demutualization proceeds under UCC's annuity contract. Plaintiffs, however, were not "eligible policyholders" of the UCC Plan at the adoption date, but were only Prudential policyholders, and were thus not entitled to receive UCC's demutualization proceeds under the reorganization plan.[1]

---

[1] Moreover, even if UCC's demutualization funds were rightfully Praxair's, which they are not, nothing in the reorganization plan required Prudential to send the funds to Praxair. In *Daniels v. Bursey*, 2003 U.S. Dist. LEXIS 15488 (D. Ill. 2003), the court considered a similar issue. The plaintiff in *Daniels* had alleged that Prudential breached a fiduciary duty because it "knew or should have known that the [transferee] Plan's fiduciaries would misappropriate the [demutualization proceeds] and should have taken steps to avert this alleged fraud." *Id*. at *7. The *Daniels* Court rejected plaintiffs' argument, agreeing with the defendant that plaintiffs' argument attempted to assert "a non-existent legal duty to inquire into how an insurance policyowner plans to allocate proceeds from its insurance policies." *Id*. at *8. Prudential did not

Plaintiffs' alternative claim that they are entitled to UCC's demutualization proceeds from 1992 through 1996, the subaccount period, presents a slightly closer question. Plaintiffs have alleged that the Tri-Party Agreement provided that the Praxair Plan became "effective" as of July 1992, the date of the Agreement, regardless of the fact that it had not gained formal approval. To recognize Praxair's Plan as effective as of that date, however, would remove the legal significance of the New Jersey insurance commissioner's approval process. Moreover, the Tri-Party Agreement merely created a subaccount out of the UCC Plan, it did not create a new annuity contract for the Praxair Plan. Praxair first received its own annuity contract in 1996, so its contribution to the Prudential surplus began at that date. Plaintiffs' claim to the UCC Plan proceeds before that date is not cognizable.

In sum, this case presents a situation in which two parties split up assets and went their separate ways. A fortuitous event some years later rendered one party's assets much more valuable than the parties had foreseen. That fortuitous event does not, however, render prospective otherwise-retrospective agreements between the parties. Plaintiffs are thus not entitled to UCC's demutualization proceeds.

  B. <u>Breach of Co-Fiduciary Duty</u>

For the reasons previously stated, none of the defendants breached a fiduciary duty to the plaintiffs. Consequently, no co-fiduciary liability exists.

**VI.** **Conclusion**

For the foregoing reasons, none of the defendants breached an ERISA fiduciary duty to

---

err by failing to send UCC's demutualization proceeds to the plaintiffs.

the plaintiffs. Plaintiffs have thus failed to state a cognizable claim under ERISA. Defendants' motions to dismiss **(docs. ## 48, 51, and 53)** are hereby GRANTED in part. Plaintiffs' ERISA claims are dismissed with prejudice, and plaintiffs' state law claims are dismissed without prejudice for lack of subject matter jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). I make no determination about the merit of plaintiffs' state law claims, or whether plaintiffs' state law claims are preempted by ERISA. The clerk shall enter judgment for the defendants and close this file.

It is so ordered.

Dated at Bridgeport, Connecticut, this 25th day of January 2008.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge